UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

RECOGNICORP, LLC,

        Plaintiff,

        v.

NINTENDO CO., LTD., and NINTENDO
OF AMERICA, INC.,

        Defendants.

Case No. 3:11-cv-01532 -ST

OPINION

STEWART, Magistrate Judge:

**INTRODUCTION**

Plaintiff, RecogniCorp, LLC ("RecogniCorp"), filed this action in December 2011, alleging that the defendants, Nintendo Co., Ltd. ("NCL") and Nintendo of America, Inc. ("NOA"), have infringed its patent by making, selling, using, offering to sell in the United States, or importing into the United States, composite image customization products, including software included on the Nintendo Wii to create and customize a facial (or other) feature of a Mii. Contending that the District of Oregon is an inconvenient forum, defendants have filed a Motion to Transfer this action to the Western District of Washington (docket # 18). For the reasons set forth below, that motion is granted.

1 – OPINION

## DISCUSSION

I.   **LEGAL STANDARD**

"A defendant for whom venue is proper but inconvenient may move for a change of venue under 28 USC§ 1404(a)." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F3d 1174, 1181 (9th Cir 2004). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 USC § 1404(a). To determine whether transfer is appropriate, the district court weighs several factors, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum selection clause is a "significant factor" in the court's § 1404(a) analysis. We also conclude that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing.

*Jones v. GNC Franchising, Inc.*, 211 F3d 495, 498–99 (9th Cir 2000).

"The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F2d 834, 843 (9th Cir1986).

II.   **ANALYSIS OF RELEVANT FACTORS**

In patent infringement cases, venue is proper in any judicial district: (1) where the defendant resides; or (2) where the defendant has committed acts of infringement and has a regular and established place of business. 28 USC § 1400(b). The residence of a corporate defendant in patent infringement actions is "any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action in question." 28 USC § 1391(c)(1).

NCL is a corporation organized under the laws of Japan, with its headquarters in Kyoto, Japan, but NOA, its wholly owned subsidiary of NCL, is a corporation organized under the laws of Washington, with its principal place of business in Redmond, Washington. Complaint, ¶¶ 3-4. Therefore, RecogniCorp's claim also could have been brought in the Western District of Washington.

Defendants concede that venue exists in the District of Oregon, but contend that venue is more convenient in the Western District of Washington. As discussed below, the balance of the applicable factors favors a transfer of this case to the Western District of Washington.

### A. Inapplicable Factors

Since there are no relevant agreements between the parties, the factors concerning the location where agreements were negotiated and executed and any forum selection clause are inapplicable.

Another inapplicable factor is familiarity with the governing law. In cases arising under federal law, such as patent infringement cases, no district is considered to have greater familiarity with the applicable law than another district. Since patent infringement is a claim arising under federal law, this court has no greater familiarity with the applicable law than any other federal court. *See Tissue Extraction Devices*, *LLC v. Suros Surgical Systems, Inc.*, No. 08-C-140, 2008 WL 4717158, at *5 (ND Ill May 20, 2008) (finding comparable knowledge regarding patent infringement between the Northern District of Illinois and the Southern District of Indiana).

### B. Plaintiff's Choice of Forum

RecogniCorp is a limited liability company formed in June 2011 under the laws of Texas, with its principal place of business in Round Rock, Texas. Complaint, ¶ 2.

3 – OPINION

NCL, a Japanese corporation, focuses on the development, marketing and sale of hardware game systems, such as the Wii system. Hibino First Decl. (docket # 21), ¶¶ 6-7. NCL's employees in Japan are responsible for the development of all Nintendo hardware systems and software for those systems. *Id*, ¶ 5. NOA, a Washington corporation, is primarily responsible for the marketing, sales and distribution of Nintendo products in North America. Story Decl., ¶ 5. Neither NCL nor NOA owns or operates an office in Oregon, employs anyone in Oregon, or has any documents in Oregon. *Id*; Hibino First Decl., ¶ 9. NOA's only connection with Oregon is that its subsidiary, Nintendo Merchandising, Inc. ("NMI"), supports in-store merchandising of Nintendo's products throughout the United States, including stores in Oregon. Story Decl., ¶ 4.

Since none of the parties are located in the District of Oregon and, as discussed below, no operative facts occurred here, RecogniCorp's choice of forum "is entitled to only minimal consideration." *Lou v. Belzberg*, 834 F2d 730, 739 (9th Cir 1987), *cert denied*, 485 US 993 (1988).

### C. Contacts with the Forum

As a Texas entity, RecogniCorp has no contact with Oregon. However, it argues that defendants have contact with Oregon in three ways: (1) NMI, a subsidiary of NOA, is located in Oregon; (2) a recruiter is located in Oregon; and (3) two third-party game developers, Foundation 9 Entertainment and the Walt Disney Company, are located in Oregon. Melton Aff., Exs. C, F. Based on evidence submitted by defendants, none of these contacts is substantial or relevant.

NMI supports retail sales in the United States, including Oregon, by assisting in-store merchandising and providing other assistance to retailers. Story Decl., ¶ 4. It has no role in the

4 – OPINION

development or functionality of the Nintendo Wii or the accused Mii software. Further, NMI does not possess any documents relevant to this action and does not employ anyone with knowledge relevant to this action. *Id.*

The recruiter identified by RecogniCorp, Jodi R. Alfano, is not employed by defendants but is an independent contract recruiter. Alfano Decl., ¶¶ 2, 6. She has no role or knowledge relating to the design, development, or functioning of any Nintendo products, the software of any Nintendo products, or software used to create a Mii on any Nintendo products. *Id,* ¶ 6. Instead, she recruits sales and marketing representatives from locations across the United States for NOA's offices in Washington, California, and New York. *Id*, ¶ 3. She recruits individuals to assist retailers with in-store displays and merchandising. *Id*. Although located in Portland Oregon, she has never recruited any individual for NOA who resided in Oregon. *Id,* ¶ 4. In any event, this case concerns patent infringement, not recruiting activities.

Similarly, the software developers identified by RecogniCorp are independent companies that develop games. Hibino Second Decl. (docket #39), ¶¶ 6-8, 10. The software game titles allegedly developed by Foundation 9 Entertainment and Walt Disney Company having nothing to do with the accused product or functionality in this case. *Id*. The accused software on the Nintendo Wii and the concept of the Mii were developed, designed, created, and programmed by NCL in Japan, and no third-party game developers from Oregon were hired or used for these tasks. *Id.* ¶¶ 6-7, 9-10.

Moreover, defendants have submitted evidence that Foundation 9 Entertainment is headquartered in Irvine, California, and not in Oregon. Lang Decl., ¶ 4. It is a conglomerate made up of several game development companies, one of which, Pipeworks Software ("Pipeworks"), is based in Eugene, Oregon. *Id*. Pipeworks has developed some games for the

Nintendo Wii, but none of them function with the accused software. *Id.* Similarly, the subsidiary of Walt Disney Company that develops games, including games for the Nintendo Wii, is not located in Oregon, but rather is located in Los Angeles, California. *Id, ¶ 5.*

Because RecogniCorp has identified no substantial or relevant contacts by defendants with Oregon, this factor favors transfer.

### D. Contacts Relating to Cause of Action in the Forum

For claims of patent infringement, the situs of material events is the location where the defendant "originally made its decision to launch the allegedly infringing product." *First Horizon Pharm. Corp. v. Breckenridge Pharm., Inc.*, No. 04-2728, 2004 WL 1921059, at *3 (ND Ill July 21, 2004). Although sales of the alleged infringing products may have occurred in Oregon, NOA's key marketing and sales decisions are made in Washington. Story Decl.,¶ 5.

RecogniCorp argues that defendants have connections with Oregon because third-party developers in Oregon work on games for the Wii. Melton Decl., Ex. F. However, as previously noted, the product accused of infringement is not games for the Wii, but "software included on the Nintendo Wii to create and customize a facial (or other) feature of a Mii." Complaint, ¶ 15. The third-party game developers in Oregon identified by RecogniCorp have no connection with the development of the Nintendo Wii or the accused software. Hibino Second Decl., ¶ 10. The Nintendo Wii and the concept of the Mii were developed, designed, created, and programmed by NCL in Japan, and no third-party game developers from Oregon were hired or used for these tasks. *Id*, ¶¶ 4-7, 9-10. Development of various games that are used by the Nintendo Wii is different from the accused Nintendo Wii software functionality in this case. The software for creating Mii is part of the Wii product, not part of the games that are played on it.

6 – OPINION

Given the lack of any relevant connection between the actions giving rise to this case and Oregon, this factor favors transfer to the Western District of Washington.

### E. Differences in Costs of Litigation

#### 1. Documents and Physical Evidence

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F3d 1338, 1345 (Fed Cir 2009), quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F Supp2d 325, 330 (EDNY 2006). Defendants anticipate that most of their documents relevant to this case will be located in Washington, California, New York, or Japan. Hibino First Decl., ¶¶ 3, 8; Story Decl.. ¶ 6.

RecogniCorp's relevant documents, if any, will be located in Texas where it is incorporated. Because RecogniCorp was formed shortly before this action was filed and does not appear to have any actual business operations, it is unlikely that it will be producing nearly as many documents as defendants. Thus, any possible burden on RecogniCorp in producing documents is presumably about the same whether venue is in Oregon or Washington.

RecogniCorp argues that electronic document storage and retrieval reduces the burden on defendants for producing and transporting documents in this case. However, as explained by the Federal Circuit, the fact "that access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *In re TS Tech USA Corp.*, 551 F3d 1315, 1321 (Fed Cir 2008), quoting *In re Volkswagen of Am, Inc.*, 545 F3d 304, 316 (5th Cir 2008) (*en banc*), *cert denied,* 555 US 1172 (2009). Accordingly, it held that the district court erred by not weighing the location of the physical evidence. Here defendants also have physical evidence, most or all of which will be located in Washington,

California, New York, or Japan, rather than Oregon. Story Decl., ¶¶ 3, 6; Hibino First Decl., ¶¶ 5-9. Weighing the location of the documents and other physical evidence for discovery and trial favors a transfer to the Western District of Washington.

### 2. Witnesses

Travel costs for witnesses generally increase with additional distance to be traveled since "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which . . . fact witnesses must be away from their regular employment." *In re Volkswagen*, 545 F3d at 317.

NCL has identified two witnesses in Japan who have knowledge about the design, development or testing of the Mii. Hibino First Decl., ¶¶ 11-12. Although these witnesses must travel a long distance from Japan either to Washington or Oregon, trial in Washington would be "much more convenient" because they "are able to work in NOA headquarters in Redmond, Washington, when they are not needed in trial. Thus, travel to Seattle would cause a significantly smaller disruption to NCL's business than travel to Portland, Oregon." *Id*, ¶ 13. Most of NOA's relevant witnesses are mostly located in Washington, with some in California or New York, but none in Oregon. Story Decl., ¶ 6.

Since Portland, Oregon, is less than 200 miles from Seattle, Washington, RecogniCorp argues that this short trip for witnesses presents a relatively minor inconvenience. In any event, RecogniCorp intends to take depositions of defendants' witnesses in Redmond, Washington. However, this argument ignores the fact that flying witnesses from Washington to Oregon for trial is not the only cost associated with trial and discovery. Other costs and expenses relating to

travel are the time spent away from work.  Travel days associated with trial here would not be necessary if the case was pending in the Western District of Washington.

Notably absent is any claim of inconvenience to RecogniCorp that would be caused by a trial in Seattle, Washington.   Accordingly, as between RecogniCorp and defendants, this factor strongly favors transfer to the Western District of Washington.

### F.        Availability of Compulsory Process

RecogniCorp suggests that the availability of compulsory process in Oregon to compel the attendance of unwilling non-party witnesses weighs against transfer.

It identifies Mr. Pierre Cote, the inventor of the patent-in-suit, as a potential witness.  But Mr. Cote resides in California, not Oregon.  Cote Decl., ¶ 2.  Although Mr. Cote declares that he is willing to travel to Oregon (*id*, ¶ 5), he does indicate that he is unwilling or unable to travel to Washington.  In any event, Mr. Cote is not subject to the subpoena power either of this court or the Western District of Washington.  The same is true for the various prior assignees and prosecuting attorneys vaguely mentioned by RecogniCorp who are located in Canada, California, Texas, and Connecticut.

RecogniCorp also identifies only two non-party witnesses who allegedly reside in Oregon, namely employees of Foundation 9 Entertainment and Walt Disney.  However, it has not identified these witnesses by name or stated the nature of their expected testimony with any specificity.  As discussed above, this case is about software used in the Nintendo Wii that was developed by NCL in Japan.  The two third-party game developers had no role in the development of the Nintendo Wii or the accused Mii customization software.  Thus, their employees in Oregon are far from critical witnesses who would be needed to be compelled to attend trial.  Accordingly, this factor is neutral at best.

## G. Ease of Access to Sources of Proof

As discussed above, the Western District of Washington where NOA is located is clearly more convenient for defendants' witnesses than the District of Oregon. Patent cases are disruptive and a drain on the time of management and employees. NOA's headquarters in Redmond is only about 15 miles by car from the federal courthouse in Seattle, Washington. All of NOA's employees who are likely to have relevant testimony are present in the Western District of Washington. As to NCL employees who must travel from Japan, trial in Seattle, Washington, would permit them to work from NOA's headquarters, resulting in a significantly smaller disruption to NCL's business than trial in Oregon would cause.

Because RecogniCorp is located in Texas, any of its witnesses are presumably located there or elsewhere, requiring air travel to reach either Oregon or Washington.

Therefore, this factor weighs in favor of transfer.

## H. Other Factors

RecogniCorp also argues that defendants cannot be inconvenienced by litigating this case in the District of Oregon because they have repeatedly availed themselves of this venue. However, this argument is not supported by either of the two cases it cites. The first case, *Nintendo of Am., Inc. v. Ferguson et al*, Case No. 3:90-cv-1144-FR, was filed by NOA over two decades ago and related to claims of copyright infringement, trademark infringement, and unfair competition against a former NOA employee. Melton Aff., Ex. I. NOA filed that case in the District of Oregon because the defendant resided in Oregon and the action arose out of acts that took place in Oregon. Here, in contrast, none of the parties reside in Oregon, and the acts giving rise to this litigation did not occur in Oregon.

The second case, *Creative Kingdoms, LLC, et al v. Nintendo of Am., Inc. et al*, Case No. 3:11-cv-00351-HU, was filed against NOA on March 21, 2011.  Melton Aff., Ex. J.  A parallel action was filed with the U.S. International Trade Commission ("ITC").  That case was stayed on June 6, 2011, case pending final determination of the ITC case.  Hence, NOA has not yet had the opportunity to dispute venue.  Moreover, NOA submits that it recently prevailed on the merits in the ITC against Creative Kingdoms, such that the issue of venue will likely be moot.

RecogniCorp also suggests that defendants delayed seeking a transfer for six months after this case was filed.  A motion to transfer may be denied if the transfer would lead to additional delay.  *Allen v. Scribner*, 812 F2d 426, 436-37 (9th Cir 1987).  However, RecogniCorp did not even attempt to serve NOA for nearly four months after filing this case and several weeks later reached an agreement that eliminated the need to implement service on NCL under the Hague Convention.  Therefore, it cannot claim any prejudice by any small delay that might be caused by a transfer.  In any event, judicial economy would be served by transferring this "fledgling" case that has no connection or relation to this District.  *See, eg, National Computer Ltd. v. Tower Indus., Inc.*, 708 F Supp 281, 284 (ND Cal 1989) (finding a minimal waste of resources in transferring a "fledgling" case).

## ORDER

For the reasons stated above, defendants' Motion to Transfer this action to the Western District of Washington (docket # 18) is GRANTED.

DATED October 3, 2012.

s/ Janice M. Stewart  
Janice M. Stewart  
United States Magistrate Judge

11 – OPINION