HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RECOGNICORP, LLC,

    Plaintiff,

v.

NINTENDO CO., LTD., and NINTENDO OF AMERICA, INC.,

    Defendants.

Case No. 2:12-cv-01873-RAJ

**PLAINTIFF RECOGNICORP, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE INFRINGEMENT CONTENTIONS AND TO RELIEVE NINTENDO OF DISCOVERY OBLIGATIONS**

**NOTE ON MOTION CALENDAR: APRIL 5, 2013**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................ 1

III. ARGUMENT ......................................................................................................... 4

    A. Legal Standard ........................................................................................... 4

    B. RecogniCorp's Infringement Contentions Include the Level of Specificity Required by LPR 120 ................................................................ 5

    C. RecogniCorp Has Provided Sufficient Detail Regarding the Code Limitations Found in Defendants' Products ............................................... 5

    D. The Areas of the Display Are Clearly Labeled in RecogniCorp's Infringement Contentions .......................................................................... 7

    E. RecogniCorp's Infringement Contentions Go Further Than Just "Parroting the Claim Language" ................................................................. 9

    F. This Court Permits Discovery to Develop Infringement Contentions ........ 9

IV. CONCLUSION .................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Deep9 Corp. v. Barnes & Noble, Inc.*,
  2012 U.S. Dist. LEXIS 135512 (W.D. Wash. Sept. 21, 2012) ................................................ 10

*Diagnostic Sys. Corp. v. Symantec Corp.*,
  2009 U.S. Dist. LEXIS 53916 (C.D. Cal. June 5, 2009) ....................................................... 4, 6

*Linex Techs. Inc. v. Belkin Int'l, Inc.*,
  628 F. Supp. 2d 703 (E.D. Tex. 2008) ...................................................................................... 6

*Network Appliance, Inc. v. Sun Microsystems, Inc.*,
  2009 U.S. Dist. LEXIS 83090 (N.D. Cal. Aug. 31, 2009) ...................................................... 10

*Network Caching Tech., LLC v. Novell, Inc.*,
  2002 U.S. Dist. LEXIS 26098 ............................................................................................... 6, 9

*Network Caching Technology v. Novell, Inc.*,
  2003 U.S. Dist. LEXIS 9881 (N.D. Cal. Mar. 21, 2003) ............................................... 4, 6, 7, 9

*Realtime Data, LLC v. Packeteer, Inc.*,
  2009 U.S. Dist. LEXIS 73217 (E.D. Tex. 2009) ....................................................................... 6

*REC Software USA, Inc. v. Bamboo Solutions Corp.*,
  2012 U.S. Dist. LEXIS 115191 (W.D. Wash. Aug. 15, 2012) ........................................... 9, 10

*Renesas Technology Corp. v. Nanya Technology Corp.*,
  2004 U.S. Dist. LEXIS 23601 (N.D. Cal. Nov. 10, 2004) ..................................................... 4, 7

*Theranos, Inc. v. Fuisz Pharma LLC*,
  2012 U.S. Dist. LEXIS 172160 (N.D. Cal. Nov. 30, 2012) ................................................... 4, 7

**OTHER AUTHORITIES**

L.R. 3-1 ........................................................................................................................................ 4, 7

LPR 120 ............................................................................................................................... 4, 5, 6, 7

Rule 120(c) ...................................................................................................................................... 3

PLAINTIFF'S MEMORANDUM IN OPPOSITION – ii
CASE NO. CV 12-01873-RAJ

HAGENS BERMAN
1918 EIGHTH AVENUE
SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1  I.     INTRODUCTION

2      RecogniCorp, LLC ("RecogniCorp") provides this Memorandum in Opposition
3  ("Defendants' Mem.") to Defendants Nintendo Co., Ltd. and Nintendo of America Inc.'s
4  (collectively "Nintendo" or "Defendants") Motion to Strike Infringement Contentions and to
5  Relieve Nintendo of Discovery Obligations. (Dkt. # 69.) The portion of Defendants' motion
6  related to discovery obligations was addressed by the Court's March 28, 2013 Minute Order.
7  (Dkt. #74.)

8      RecogniCorp's Infringement Contentions ("ICs") fully comply with the requirements of
9  this Court's Local Rules and all applicable standards. Defendants' attempted reliance on their
10 cases is misplaced. Courts commonly allow citation on "information and belief" for elements
11 involving software, and there is no general requirement that computer products need to be
12 reverse engineered to re-construct complicated software code. This is especially true where the
13 ICs clearly outline the code functionality involved, and where the overall functionality of the
14 product strongly suggests that such code is present. Here, Defendants' systems are virtually
15 identical to preferred embodiments of the patent. The ICs establish a correlation between the
16 specific claim elements and the corresponding features of Defendants' infringing devices. That
17 is the purpose of contentions, and it is satisfied here. Defendants' Motion should be denied.

18 II.    FACTUAL BACKGROUND

19     The patent in suit, U.S. Patent No. 8,005,303 (the "'303 patent"), discloses and claims
20 several aspects of a system, product and method "for creating a composite image." (U.S. Patent
21 No. 8,005,303 12:30-16:11.) Defendants infringe the '303 patent through their Nintendo Wii,
22 Wii U, and 3DS products, each of which include functionality to create and customize the facial
23 features of an on-screen character or "avatar" referred to as a "Mii." (Dkt. #1, p. 4.)

24     The process for creating a Mii is strikingly similar to the preferred embodiments and
25 claims of the '303 patent. For example, Claim 1 of the patent requires showing a series of facial
26 feature images (for example, a number of different eyes that can be selected for the Mii) in a
27 section of the screen. (U.S. Patent No. 8,005,303 12:31-35.) Below a number of eyes is shown
28 in the Mii creation screen for the Wii U, blocked out in red:

PLAINTIFF'S MEMORANDUM IN OPPOSITION – 1
CASE NO. CV 12-01873-RAJ

HB HAGENS BERMAN
1918 EIGHTH AVENUE
SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

```
```



(*See* Dkt. #70-2, p. 6.)

Once one of those different eyes (or other facial feature, such as hair style, lips, etc.) is selected, the claim requires that the selected eye be incorporated into a composite face on another part of the screen. (*See* U.S. Patent No. 8,005,303 12:36-42.) Here in the Wii U system, a particular eye has been selected, and incorporated into the face on the left, exactly as required by the claim:



(*See* Dkt. #70-2, p. 7)

The claim recites that the facial features (eyes, noses, etc.) are associated with "facial feature image codes," and that the composite facial image (the complete face on the left of the screen) is associated with a "composite facial image code" that incorporates at least one of the facial feature image codes. (*See* U.S. Patent No. 8,005,303 12:34-42.) The claims provide that the composite face can be recreated on another screen using the composite facial image code. (*See* U.S. Patent No. 8,005,303 12:44-45.) This allows the transmission of codes between computers, which would use relatively little bandwidth, compared to transmitting the full image

1   files themselves.  Nintendo's three accused products allow this exact type of recreation of one
2   player's Mii on another player's system.  This happens, for example, in multiplayer games.  (*See*
3   Dkt. #70-2, p. 50-51.)

4   Dependent claims further specify that the facial feature (again, eyes in the example
5   below) can be further modified once it is selected, for example by raising it or lowering it
6   relative to the rest of the face. (*See* U.S. Patent No. 8,005,303 12:48-50.)  In another dependent
7   claim, this is further specified as being done using arrows.  (*See* U.S. Patent No. 8,005,303
8   12:54-56.)  That is exactly what happens in the Nintendo devices, as shown by the Up and Down
9   arrows on the right hand side of the screen:



17  (*See* Dkt. #70-2, p. 12.)

18  Given the similarity between the Nintendo devices and the claims above, and the fact that
19  the software must be able to operate on each facial "feature" individually to incorporate it into
20  the "composite" facial image, RecogniCorp reasonably believes that infringement will be shown
21  through a straightforward review of the relevant software code.

22  Currently, Defendants are in complete control of that software code.  Plaintiffs have
23  never had access to the code.  Accordingly, when Recognicorp served its ICs, (Dkt. #68), it
24  asserted presence of those "facial feature codes" on information and belief.[1]  There is no doubt,
25  however, about the nature of RecogniCorp's infringement analysis, what products and software

---

[1] RecogniCorp's contention claim charts and Local Patent Rule 120(c) document are attached to Defendants' declaration in support of their Motion to Strike. (Dkt. #70-2, pp. 1-122.)

PLAINTIFF'S MEMORANDUM IN OPPOSITION – 3
CASE NO. CV 12-01873-RAJ

HAGENS BERMAN
1918 EIGHTH AVENUE
SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

features are accused of infringement, and more specifically, which features of the accused products are associated with each element of the claims.

## III.     ARGUMENT

### A.     Legal Standard

At this stage of the case, contentions are intended to streamline the discovery process, not to establish a complete basis for a party's infringement claims. "PICs need not provide support for a party's claims, and are 'merely designed to streamline the discovery process.'" *Renesas Technology Corp. v. Nanya Technology Corp.*, 2004 U.S. Dist. LEXIS 23601, at *16 (N.D. Cal. Nov. 10, 2004) (internal citation omitted). The contentions should provide notice of the theories of infringement with some specificity more than the patent itself. "[A] party may comply with Patent L.R. 3-1 (which is nearly identical to LPR 120) by setting forth particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patents themselves." *Network Caching Technology v. Novell, Inc.*, 2003 U.S. Dist. LEXIS 9881, at *13 (N.D. Cal. Mar. 21, 2003).

Further, the Local Patent Rules do not require RecogniCorp's ICs "be incontrovertible or presented in excruciating detail. While the rule states that these disclosures should be 'as specific as possible,' there is no requirement that [RecogniCorp] thoroughly present and successfully defend its theories of infringement in the confines of a PIC chart." *Network Caching Technology v. Novell, Inc.*, 2003 U.S. Dist. LEXIS 9881, at *14.

In particular, asserting the presence of software elements on "information and belief" is permissible. Relying "on information and belief" in ICs is appropriate under this Court's Local Patent Rules, especially in light of the fact that courts routinely allow parties to review source code in discovery before requiring specific infringement contentions regarding software code. *See Diagnostic Sys. Corp. v. Symantec Corp.*, 2009 U.S. Dist. LEXIS 53916, at *20 (C.D. Cal. June 5, 2009); *Theranos, Inc. v. Fuisz Pharma LLC*, 2012 U.S. Dist. LEXIS 172160, at *17 (N.D. Cal. Nov. 30, 2012) (explaining that there are situations where a plaintiff is constrained by the defendants' sole possession of source code).

PLAINTIFF'S MEMORANDUM IN OPPOSITION – 4
CASE NO. CV 12-01873-RAJ

HAGENS BERMAN
1918 EIGHTH AVENUE
SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

### B.  RecogniCorp's Infringement Contentions Include the Level of Specificity Required by LPR 120

RecogniCorp's ICs span 122 pages and outline in detail the mapping of the claim elements to the products. They contain at least as much specificity as required by the Local Patent Rules. RecogniCorp's ICs satisfy the purpose of framing the infringement issues for *Markman* and discovery, and putting Defendants on notice of RecogniCorp's infringement theories.

Defendants' arguments can be boiled down to the following: (1) RecogniCorp has failed to provide detail regarding the "code" limitations found in Defendants' products, and that somehow pleading on "information and belief" is inappropriate at this stage, even for software limitations; (2) RecogniCorp has failed to provide detail of the "display areas," (3) RecogniCorp's claim charts "simply parrot the claim language," and (4) discovery is not permitted to enhance infringement contentions. RecogniCorp addresses each of these issues below.

### C.  RecogniCorp Has Provided Sufficient Detail Regarding the Code Limitations Found in Defendants' Products

Despite Defendants' assertions that RecogniCorp's ICs are insufficient because RecogniCorp has not "reverse engineer[ed]" Defendants' infringing products to identify the specific "codes" and "code factors" found in Defendants' accused devices, such specificity and extreme detail are not required in ICs under LPR 120. (Defendants' Mem., p. 6.) Defendants' also assert that RecogniCorp's reliance on "information and belief" is inappropriate under LPR 120. (Defendants' Mem., pp. 4, 6, 9-10.) Neither argument is correct.

Courts routinely allow parties to review source code in discovery before requiring specific infringement contentions regarding software code:

> In patent infringement actions . . . where the accused products are software products, courts routinely allow plaintiffs a sufficient opportunity to review source code before requiring an identification of specific infringing products and the manner by which they infringe. Courts recognize that plaintiffs are limited in their ability to prepare preliminary infringement contentions on

PLAINTIFF'S MEMORANDUM IN OPPOSITION – 5
CASE NO. CV 12-01873-RAJ

HAGENS BERMAN
1918 EIGHTH AVENUE
SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

accused products in software cases, where necessary source code is solely in the possession of the defendants.

*Diagnostic Sys. Corp. v. Symantec Corp.*, 2009 U.S. Dist. LEXIS 53916, at *20.[1] The *Diagnostic Systems* Court explained that "[t]he bottom line is that, **after** a plaintiff-patentee has had a reasonable opportunity to review the source code for the defendant's accused software product . . . the patentee must . . . provid[e] PICs to the defendant that clearly identify and explain how the source code for the accused product infringes upon specific claims for the patent-in-suit." *Id.* at 21 (emphasis added). Indeed, courts have expressly held that a plaintiff cannot be expected to reflect the details of the defendant's confidential source code in its infringement contentions. *See, e.g., Network Caching Tech., LLC v. Novell, Inc.*, 2002 U.S. Dist. LEXIS 26098, at *19-20. Thus, at this stage RecogniCorp's ICs are sufficient under LPR 120.

Defendants argue that RecogniCorp should be able to reverse engineer Defendants' products, but it is not necessary to reverse engineer products for contentions, especially when such work would be wasteful and unreasonable because Defendants can easily and quickly produce such information during discovery. Defendants seek to rely on *Network Caching*, but in that case the issue involved a specific court order that required "reverse engineering or its equivalent." *Network Caching Tech., LLC v. Novell, Inc.*, 2003 U.S. Dist. LEXIS 9881, at *15. The Court specifically distinguished between that order and the Local Patent Rules, holding that "the question whether [the plaintiff] conducted 'reverse engineering or its equivalent' is not

---

[1] Many other courts have also dealt with whether review of source code is necessary prior to the preparation of ICs. For example, the Eastern District of Texas, whose local patent rules are similar to this District's local patent rules, has noted that a plaintiff's preparation of ICs is often restricted without the aid of a defendant's source code. *See Realtime Data, LLC v. Packeteer, Inc.*, 2009 U.S. Dist. LEXIS 73217, at *27 (E.D. Tex. 2009) (citing *Am. Video Graphics,L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560-61 (E.D. Tex. 2005) (ordering the plaintiff to supplement its infringement contentions with specific references to source code within thirty days of gaining access to the code); *Linex Techs. Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 709 (E.D. Tex. 2008) (recognizing the limitations on a plaintiff's ability to provide sufficiently detailed infringement contentions when the source code for such software is proprietary and solely in the defendant's possession).

PLAINTIFF'S MEMORANDUM IN OPPOSITION – 6
CASE NO. CV 12-01873-RAJ

HAGENS BERMAN
1918 EIGHTH AVENUE
SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

synonymous with whether it has complied with [the local patent rules], which . . . requires a party only to set forth its specific theories of infringement." *Id.* Thus, the court found that the plaintiff had provided sufficient information in its ICs to satisfy the requirements of Patent Local Rule 3-1, which is nearly identical to this Court's LPR 120.

Contrary to Defendants' assertions, infringement contentions are not the proper vehicle to require RecogniCorp to marshal evidence without an opportunity to take discovery from Defendants. *See, e.g., Renesas Tech. Corp. v. Nanya Tech. Corp.*, 2004 U.S. Dist. LEXIS 23601, at *16 (N.D. Cal. 2004) ("PICs need not provide support for a party's claims, and are 'merely designed to stream line the discovery process.'"). This is especially the case where, as here, the relevant evidence is uniquely in the possession of Defendants and easily produced.

Defendants cite *Theranos, Inc. v. Fuisz Pharma LLC*, 2012 U.S. Dist. LEXIS 172160, at *17 (N.D. Cal. Nov. 30, 2012) to support their assertion that RecogniCorp cannot point to the presence of the software code elements on "information and belief." This argument misreads *Theranos*. While the court in *Theranos* criticized the use of "information and belief" language ***in that case***, it distinguished its own holding from cases, like this one, involving source code: "the Court notes that authority provided by Fuisz regarding courts' 'recognition' that there are situations where a plaintiff is constrained by defendants' sole possession of information relates to cases involving allegedly-infringing source code." *Id.* at *22.

Given the clear correspondence between the patent claims and the visible features of the Nintendo products, and even correspondence between very specific dependent claims and the Nintendo products, RecogniCorp's belief that Defendants' infringing products use the image codes as claimed in the '303 patent is reasonable.

**D. The Areas of the Display Are Clearly Labeled in RecogniCorp's Infringement Contentions**

Defendants further argue, with respect to the Nintendo 3DS product, that RecogniCorp somehow fails to point to different areas of the screen as required by the claim. (Defendants' Mem., pp. 5, 7.) This is incorrect.

PLAINTIFF'S MEMORANDUM IN OPPOSITION – 7
CASE NO. CV 12-01873-RAJ

HAGENS BERMAN
1918 EIGHTH AVENUE
SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   Shown below is an excerpt from RecogniCorp's ICs addressing the two areas of the
2   display required by the claims. Two areas are clearly shown and identified in the text.
3   (Dkt. #70-2, p. 89, highlighting added):

| selecting a facial feature image from the <mark>first area of the first display</mark> via a user interface associated with the first device, wherein the first device incorporates the selected facial feature image into a composite image on <mark>a second area of the first display</mark>, | The Accused Instrumentalities select a facial feature image from the first area of the first display via a user interface associated with the first device, wherein the first device incorporates the selected facial feature image into a composite image on a second area of the first display.<br><br><mark>Utilizing the same example of eyes, a particular eye shape may be selected from the first area via a user interface</mark>. In the left screen shot, an eye is about to be selected:<br><br> <br><br>Source: http://www.youtube.com/watch?v=NBXKCYi0hg0  (March 1, 2013)<br><br><mark>That eye is incorporated by the Accused Instrumentalities into the composite image on a second area of the screen.</mark> As shown in the right screen shot, the composite image has an eye shape corresponding to the eye shape outlined in red in the first area of the screen.<br><br>The display of the Accused Instrumentalities is separated into two portions, both integral to the device. The first area of the display resides in the lower portion of the device. <mark>The second area of the display resides in the upper portion of the device.</mark> On information and belief, the two portions of the display operate utilizing substantial shared electronics, circuitry, processor(s) and/or software  Plaintiff contends that that this limitation is literally present in the Accused Instrumentalities. To the extent any portion of this limitation is construed or applied so that literal infringement is not present, then it is present under the doctrine of equivalents. Any differences between the provision of screen areas in the Accused Instrumentalities and the recited screen areas are insubstantial. |
|---|---|

As the display areas are clearly identified in RecogniCorp's ICs, Defendants do not, and *cannot*, complain that they are not on notice of what areas of the display RecogniCorp has identified.

PLAINTIFF'S MEMORANDUM IN OPPOSITION – 8
CASE NO. CV 12-01873-RAJ

HAGENS BERMAN
1918 EIGHTH AVENUE
SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Defendants argue that RecogniCorp's analysis shows that it failed to "reverse engineer" the products, but the two display areas are clear from mere observation of the device in operation.

### E. RecogniCorp's Infringement Contentions Go Further Than Just "Parroting the Claim Language"

Defendants cherry pick a quote out of *Network Caching* to support their position that RecogniCorp's ICs merely mimic the claim language, without providing an explanation of the context. Defendants claim that the court held that "it is inappropriate to 'simply mimic[] the language of the claim,' providing 'no further information to defendants than the claim language itself.'" (Defendants' Mem., p. 6.) However, the *Network Caching* court found issues with the language of the contention because the contention failed to provide *any* "link between the quoted passages and the infringement contention that simply mimics the language of the claim." *Network Caching Tech., LLC*, 2002 U.S. Dist. LEXIS 26098, at *17-18. This is not the case here. The '303 patent claims span nearly three pages of text in the patent, and RecogniCorp's ICs span 122 pages of claims and analysis. Thus, not only do RecogniCorp's contentions provide more substance beyond "mimicking" the claim language, but the ICs are voluminous and descriptive, and provide a link between the quoted passages, screenshots, and the infringement contentions.

### F. This Court Permits Discovery to Develop Infringement Contentions

Throughout its supporting memorandum, Defendants repeatedly assert that discovery is not an appropriate source to develop ICs. (Defendants' Mem., pp. 4, 9-10.) However, this Court has explicitly held otherwise, explaining that "this District's Patent Rules 'requir[e] both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions ***when new information comes to light in the course of discovery***.'" *REC Software USA, Inc. v. Bamboo Solutions Corp.*, 2012 U.S. Dist. LEXIS 115191, at *7 (W.D. Wash. Aug. 15, 2012) (citing *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006) (emphasis added).

PLAINTIFF'S MEMORANDUM IN OPPOSITION – 9
CASE NO. CV 12-01873-RAJ

HAGENS BERMAN
1918 EIGHTH AVENUE
SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

In fact, the Local Rules "seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *Id.* Indeed, the Court's Rules not only contemplate, but *require* supplementation as new information becomes available. *Id.* (explaining that this District's Local Patent Rules require the plaintiff to proceed with diligence in amending its ICs when new information comes to light in the course of discovery); *see also Deep9 Corp. v. Barnes & Noble, Inc.*, 2012 U.S. Dist. LEXIS 135512, at *20 (W.D. Wash. Sept. 21, 2012) (explaining that good cause exists to amend ICs when recent discovery material is revealed that had not previously come to light); *Network Appliance, Inc. v. Sun Microsystems, Inc.*, 2009 U.S. Dist. LEXIS 83090, at *7-8 (N.D. Cal. Aug. 31, 2009) (same).

Finally, Defendants assert that "the excuse that 'discovery is needed' is particularly inappropriate in this case, because the plaintiff has not even served any discovery requests." (Defendants' Mem., p. 4.) This argument is a complete red herring. Discovery will proceed on a schedule that will not be completed until fall of this year (Dkt. #68.) Thus, Defendants insinuations that RecogniCorp was somehow required to serve discovery requests upon Defendants prior to its ICs on March 1, 2013 is unfounded. If and when RecogniCorp acquires new information during the course of discovery, particularly the Defendants' source code for the accused features, RecogniCorp will promptly supplement its contentions.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Strike and for Relief from Discovery Obligations should be denied in its entirety.

PLAINTIFF'S MEMORANDUM IN OPPOSITION – 10
CASE NO. CV 12-01873-RAJ

HAGENS BERMAN
1918 EIGHTH AVENUE
SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

| | | | |
|---|---|---|---|
| 1 | DATED: April 1, 2013 | By: | /s/ Ryan Meyer |

                                                                  Mark S. Carlson (WSBA #17493)
Ryan Meyer (WSBA #37832)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
markc@hbsslaw.com
ryanm@hbsslaw.com

*Attorneys for Plaintiff*

Steven R. Daniels (*Pro Hac Vice*)
Timothy Devlin (*Pro Hac Vice*)
Melissa V. Melton (*Pro Hac Vice*)
FARNEY DANIELS PC
800 S. Austin Avenue, Suite 200
Georgetown, Texas 78626
Telephone: (512) 582-2820
Facsimile: (512) 582-2829
sdaniels@farneydaniels.com
tdevlin@farneydaniels.com
mmelton@farneydaniels.com

*Attorneys for Plaintiff*

## PROOF OF SERVICE

I hereby certify that on April 1, 2013, I electronically filed the above document(s) with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to all registered counsel.

*/s/ Ryan Meyer*
Ryan Meyer

PLAINTIFF'S MEMORANDUM IN OPPOSITION – 12
CASE NO. CV 12-01873-RAJ

HAGENS BERMAN
1918 EIGHTH AVENUE
SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594