HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RECOGNICORP, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>NINTENDO CO. LTD., et al.,<br><br>    Defendants. | CASE NO. C12-1873RAJ<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the court on motions from Defendants Nintendo Co., Ltd. and Nintendo of America, Inc. (collectively "Nintendo"). Nintendo initially asked the court to strike the infringement contentions of Plaintiff Recognicorp, LLC. Before the court addressed that motion, Nintendo filed an application with the United States Patent and Trademark Office ("PTO") for reexamination of the patent-in-suit. Nintendo now asks the court to stay this litigation pending the outcome of its reexamination request.

For the reasons stated below, the court DENIES the motion to strike Recognicorp's infringement contentions (Dkt. # 69) and GRANTS the motion to stay (Dkt. # 77). The court directs the clerk to STAY this case. This order concludes with instructions to Nintendo for keeping the court informed of relevant developments in the reexamination.

ORDER – 1

## II. BACKGROUND & ANALYSIS

Recognicorp, so far as the record reveals, exists solely to pursue whatever rights inhere in its ownership of United States Patent No. 8,005,303 B2. The '303 Patent, which issued in August 2011, covers methods and systems for encoding and decoding certain image data. The '303 Patent has 42 claims, 5 of which are independent. Three of the independent claims cover methods for creating composite images, one covers a system for creating composite images, and the last independent claim covers a computer program for the same purpose. All of the claims in the '303 Patent are directed to the creation of facial images by selecting individual facial features (e.g., eyes, lips, noses) and combining them. Every claim includes what the court will refer to as "external elements" – elements that would be apparent simply from observing embodiments of the patented methods, systems, or programs. For example, claim 1 requires the display of "facial feature images" in one area of a display, the assembly of those feature images into a composite in another area of that display, and the reproduction of the composite image on a second display. Every claim also includes what the court will refer to as "code elements." These elements describe encoding data associated with the facial feature elements and the use of that encoded data to create an encoded composite facial image.

According to Recognicorp, Nintendo infringes every claim of the '303 Patent with its Wii and Wii U video game consoles and its 3DS and 3DS XL handheld consoles. Recognicorp filed this patent infringement suit in the United States District Court for the District of Oregon in December 2011. So far as the record reflects, Recognicorp did very little thereafter. It did not obtain summons until April 2012. Once it obtained summons, it agreed that Nintendo need not respond to its complaint until the end of August 2012. In mid-August, Nintendo filed a motion to transfer venue to this District. Although Recognicorp opposed the motion, the Oregon court granted it, and this court received the case in late October. After obtaining a joint status report from the parties, the court issued a scheduling order in January 2013 to carry this action through the claim

ORDER – 2

construction process.  Among other things, the order required Recognicorp to file its infringement contentions by March 1, 2013.  The scheduling order adheres to this District's local patent rules, which require the parties to exchange a series of disclosures regarding infringement, non-infringement, and invalidity to ensure that they are prepared to file claim construction briefs.  *See generally* W.D. Wash. Local Patent Rules ("LPR") 120-131.

Recognicorp's infringement contentions, although exceedingly lengthy, are facially inadequate to assert patent infringement.  Recognicorp conveyed the bulk of its infringement contentions in three tables corresponding to the Wii, Wii U, and 3DS handheld devices.  The table for the Wii alone is more than 40 pages long.  Each table offers a laborious comparison of the external elements described in each claim to the corresponding display of those elements in the accused device.  So, for example, the Wii table has photographs of the Wii's screen displaying facial features for selection and the assembly of those features into a face on the same screen.  But, for *every* one of the code elements, Recognicorp offered no comparison at all.  It instead declared that "[o]n information and belief, a review of Defendant's information provided in discovery, including but not limited to technical specifications and/or source code, will confirm [the presence of the code elements in the accused device]."  Thus, as of its March 1 infringement contentions, Recognicorp had done nothing to explain to Nintendo how its accused devices contained the code elements that every claim of the '303 Patent requires.

The District's local patent rules require disclosures in advance of the completion of claim construction discovery. *Compare* LPR 120 (requiring infringement contentions within 15 days of a scheduling order) *with* LPR 133 (timing claim construction discovery to conclude 50 days after completion of joint claim construction chart).  In this case, for instance, claim construction discovery is not set to conclude until August 2013.  In an appropriate case, discovery might be necessary to flesh out the preliminary assertions of

ORDER – 3

an infringement (or non-infringement) contention.  Whether this is such a case, the court cannot say.  Perhaps the code elements of the '303 Patent are such that the presence of the external elements strongly implies the presence of the code elements, even if the actual observation of the code elements is a complex process.  On the other hand, perhaps Recognicorp has no idea if the code elements are present in the accused devices, and it lacked a reasonable basis for bringing this suit in the first place.  The court cannot say.

What the court can say is that although Recognicorp asserts that it needs discovery to obtain the information necessary to explain how the accused devices implement the code elements, Recognicorp did not serve its first discovery request until April 18, 2013 – sixteen months after it filed suit, three months to the day after this court issued its scheduling order, and seven weeks after Recognicorp filed its infringement contentions.  Recognicorp is in no hurry, it would appear, to prove its allegations of patent infringement.

Nintendo initially asked both that the court strike Recognicorp's infringement contentions and relieve Nintendo of the obligation to provide discovery until Recognicorp remedied the defects described above.  That request is counterproductive.  There is no reason to strike the infringement contentions.  They are inadequate, at least in part, but striking them will put no one any closer to resolving this case.  Similarly, to relieve Nintendo of the obligation to provide discovery is pointless.  It would appear that Recognicorp needs discovery to complete its infringement contentions.  Nintendo's initial request, in short, would delay this already snail-paced action for no apparent purpose.  At a minimum (with no allegation from Nintendo that Recognicorp has violated its Rule 11 responsibilities or otherwise made baseless allegations of infringement), the court would allow Recognicorp a reasonable opportunity to verify its infringement allegations through discovery.

ORDER – 4

1
2
3
4
5
6
7
8
9
10
11

The court's concerns about the preliminary assessment of infringement take on a different sheen, however, in light of Nintendo's recent reexamination application.  On April 8, Nintendo filed its request for ex parte reexamination, pointing out numerous examples of prior art that the PTO did not consider when it examined the applications that led to the '303 Patent.  Nintendo believes that the claims are either invalid in light of the prior art or that the PTO must substantially narrow them.  The PTO will decide no later than mid-summer whether to conduct a reexamination.  If it chooses to reexamine the patent, the process will likely take at least a year, and perhaps two.  The PTO's statistics confirm, moreover, that if it decides to reexamine the patent, it is highly likely that it will, at a minimum, modify some of the claims.  Nintendo asks the court to stay this litigation entirely until its reexamination request reaches a resolution.

12
13
14
15
16
17
18
19
20
21

The court's power to manage its own docket gives it discretion to stay a proceeding.  *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  That discretion extends to the decision to stay a patent infringement action pending reexamination.  *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008).  There is no requirement that a court issue a stay pending reexamination.  *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001).  In this District, courts weighing a stay pending reexamination have considered whether a stay is likely to simply the litigation, whether discovery is complete and a trial date is pending, and whether the stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party.  *Pac. Bioscience Labs., Inc. v. Pretika Corp.*, 760 F. Supp. 2d 1061, 1063 (W.D. Wash. 2011).

22
23
24
25
26

The court cannot predict whether the reexamination process will simplify this litigation, but it could hardly make it more complicated.  Even Recognicorp's incomplete infringement contentions span more than 100 pages.  Even if reexamination does not lead to the cancellation of some claims, it might well prod Recognicorp to focus its allegations.

27
28

ORDER – 5

As to the status of this litigation, although it is almost a year and a half old, it has scarcely begun. Recognicorp did not serve its first discovery request until two weeks ago. There is no trial date. As noted, Recognicorp has demonstrated no urgency to bring this litigation to a close. Its opposition to Nintendo's motion to stay, in which it decries the delay inherent in reexamination, appears to be the first time it has demonstrated a sense of urgency.

Finally, the court finds no clear disadvantage to either party. The court is wary of the use of reexamination applications as a delay tactic. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1305 (Fed. Cir. 2009) (observing recent increases in number of reexamination applications, and noting that "if routinely available to delay the judicial resolution of disputes, [reexamination] is subject to inequity, if not manipulation and abuse"). Nintendo's decision to spring its reexamination application at the outset of claim construction, when this suit has been pending for more than a year, raises suspicion. Nonetheless, given that Recognicorp has failed to advance this litigation on its merits, it is plausible that Nintendo did not recognize the need for reexamination until Recognicorp begin revealing its expansive view of the claims of the '303 Patent. Recognicorp suggests no plausible disadvantage other than the delay inherent in the reexamination proceeding. Recognicorp has not, for example, demonstrated that the stay will impact its business. Indeed, Recognicorp has not demonstrated that it has any business other than this lawsuit. Given that Recognicorp claims an invention priority date as far back as 1998, much of its infringement and damages assessments will be backward-looking. For that reason, it is unlikely that the stay will make its evidentiary burden more difficult to meet.

Considering all relevant factors, and considering the lack of progress in this litigation, the court finds no clear disadvantage to Recognicorp from granting a stay, and

ORDER – 6

stays this action in light of the strong possibility that reexamination will substantially reframe this litigation.

### III.  CONCLUSION

For the reasons stated above, the court DENIES Nintendo's motion to strike Recognicorp's infringement contentions (Dkt. # 69) but GRANTS Nintendo's motion to stay (Dkt. # 77).  The clerk shall STAY this litigation.

Nintendo, as the proponent of the stay, is responsible for promptly notifying the court of the status of the reexamination.  Accordingly, it shall promptly advise the court when the PTO decides whether to reexamine the patent, or of any other developments that would delay that decision beyond the end of July.  The court may impose additional disclosure requirements once the PTO makes that threshold determination.

DATED this 8th day of May, 2013.

_Richard A. Jones_
The Honorable Richard A. Jones
United States District Court Judge

ORDER – 7